IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES S. ELIASON, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-5755 |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF LEHIGH, et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                    August 13, 2009

**I. Introduction**

Before the Court are Defendants' Motions to Dismiss Plaintiff James S. Eliason's

Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On

December 12, 2008, Plaintiff filed a Complaint against the County of Lehigh, Warden Dale A.

Meisel, Lieutenant Brian Dugan, Correctional Officer Gulliver, Correctional Officer Schaeffer,

and Correctional Officers John Doe 1 and 2 (Doc. No. 1).  On April 28, 2009, Plaintiff filed an

Amended Complaint that included these Defendants as well as Primecare Medical, Inc.

("Primecare") (Doc. No. 9).

Plaintiff's Amended Complaint alleges: (a) violations of his Eighth and Fourteenth

Amendment rights pursuant to 42 U.S.C. § 1983 against all Defendants (Counts I and II); (b) a

Monell action pursuant to 42 U.S.C. § 1983 against the County of Lehigh (Count III); (c) a

violation of his right to be free from cruel and unusual punishment under Article I, § 13 of the

Pennsylvania Constitution (Count IV); and (d) a supplemental state law claim for corporate

-1-

negligence against Primecare (Count V).  On June 30, 2009, Primecare filed a Motion to Dismiss
Plaintiff's Amended Complaint (Doc. No. 12).  On July 3, 2009, the remaining Defendants
collectively filed a Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 14).  On July
28, 2009, Plaintiff filed responses to both motions (Doc Nos. 15, 16).

For reasons that follow, the Court grants Warden Meisel's Motion to Dismiss the
Amended Complaint on all Counts.  Plaintiff will have thirty (30) days to amend his Complaint
only with respect to Warden Meisel.  The Court denies the Motion to Dismiss the Amended
Complaint of Lieutenant Dugan, Correctional Officers Gulliver and Schaeffer, and the County of
Lehigh on all Counts.  Finally, the Court grants Primecare's Motion to Dismiss with regard to
Counts I, II, and IV and transfers Count V to the Court of Common Pleas for Lehigh County for
disposition.[1]

## II.  General Background

On December 16, 2006, while incarcerated at Lehigh County Prison, Plaintiff was
violently assaulted by fellow inmate Anthony Jordan.[2]  (First Am. Compl. at ¶¶ 13, 20).  The
attack occurred on Floor 4B of the Lehigh County Prison, a minimum supervision unit, where
two correctional officers are typically stationed for 8 hour shifts.  (Id. at ¶¶ 16, 27).  Most inmates
housed on Floor 4B are non-violent, first time offenders over the age of forty.  (Id. at ¶ 18).  At
the time of the incident, Plaintiff was forty-three years old.  (Id. at ¶ 19).

---

[1]      John Doe 1 and 2 are named as defendants in Counts I, II, and IV of Plaintiff's
Amended Complaint.  Plaintiff's Amended Complaint fails to allege any facts specific to these
Defendants.  However, John Doe 1 and 2 have not been identified and have not filed a motion to
dismiss.  Therefore, they will remain Defendants in this action.

[2]      Anthony Jordan is not a party to this action.

On December 15, 2006, the day prior to the assault, Plaintiff and Jordan had engaged in an argument over a cup of soup.  (Id. at ¶¶ 22-24).  On December 16, 2006, Jordan attempted to take Plaintiff's shoes.  Plaintiff grabbed his shoes and turned to place them under his bed.  (Id. at ¶¶ 25, 26).  When Plaintiff turned, Jordan assaulted him from behind.  (Id. at ¶ 27).  Plaintiff's chin struck the floor and he lost consciousness.  After two and a half hours, Plaintiff regained consciousness and was in his bed.  He later learned that he had been placed in his bed by Jordan and another inmate.  (Id. at ¶¶ 27-30).  Plaintiff was covered with blood and urine; felt extreme pain in the back of his head; had a mouth full of blood, contusions to his shoulder, and a fractured jaw.  (Id.).  Plaintiff alleges that Officers Gulliver and Shaeffer, the two officers on duty at the time of the attack, were watching a Philadelphia Eagles playoff game instead of supervising inmates.[3]  (Id. at ¶ 31).

After awakening, Plaintiff was taken by wheelchair to the prison infirmary.  At all relevant times, Defendant Primecare, Inc. was the contractual provider of medical care to inmates of Lehigh County Prison.  (Id. ¶ 95).  At the prison infirmary, Plaintiff was provided only an ice pack for the pain in his head.  His blood pressure was abnormally high at 150 over 100.  (Id. at ¶¶ 32, 33).  On December 18, 2006, two days after the incident, Plaintiff was taken to a private firm for an x-ray.  In the interim, Plaintiff was not afforded any medication for his pain.  (Id. at ¶¶ 33-36).  The x-ray verified that Plaintiff suffered a fractured jaw, concussion, and injured spine.  (Id.).

---

[3]    The Complaint and parties' pleadings refer to the officers as Gulliver and Schaeffer, so the Court refers to them throughout this Opinion by those names.  However, the actual names of the two correctional officers are Arlan Shafer and Augustive Rosario.  (See Doc. No. 14).

After returning from the private firm, Plaintiff was taken to see Lieutenant Brian Dugan. (Id. at ¶ 37). Lieutenant Dugan asked Plaintiff to admit that he had been fighting. Plaintiff had no memory of the incident and told Lieutenant Dugan that he had suffered a seizure. Lieutenant Dugan informed Plaintiff that he did not believe his account and placed Plaintiff in isolation in a room known as "the hole." Plaintiff remained in the hole for three days, the first two of which he was given only solid foods. Plaintiff could not eat solid food because of his fractured jaw. He did not eat for two days. (Id. at ¶¶ 38-45).

On December 20, 2006, Plaintiff was questioned by Dugan for a second time. He told Dugan that he could not remember the events that led to his injuries. Plaintiff also requested medication and liquid food because he could not eat solid food. Lieutenant Dugan informed Plaintiff that he would need to fill out a sick call slip. Dugan stated that he did not have any available. Later that day, Lieutenant Dugan provided Plaintiff with pain medication (600 mg of Motrin twice a day) after hearing from other inmates that Jordan had attacked Plaintiff without provocation.[4] (Id. at ¶¶ 45-61).

On December 21, 2006, Plaintiff was taken to St. Luke's Hospital where he remained as an in-patient until December 23, 2006. Plaintiff was administered several diagnostic tests and was given morphine injections four times a day for his pain. (Id. at ¶¶ 61-65). On December 22, 2006, six days after the initial incident, Plaintiff underwent surgery on his left mandible that involved the insertion of a titanium plate. (Id. at ¶ 67).

On December 12, 2008, Dr. John J. Shane, who was asked to review Plaintiff's file and

---

[4]     Plaintiff's medical files note that Dugan provided Plaintiff 600 mg of Motrin, twice daily. (Doc. No. 16-2).

issue a certificate of merit for Plaintiff's state law malpractice claim, conducted a review of (a) Plaintiff's complaint; (b) Primecare's medical records; (c) Lehigh County Department of Corrections' records; and (d) St. Luke's Hospital's medical records. (Doc. No. 16-2, Medical Report of Dr. John J. Shane).  Dr. Shane concluded that Plaintiff suffered a grade three concussion that caused his loss of consciousness, amnesia, and permanent cognitive disabilities. (Id.).  Dr. Shane found that "[t]here is no doubt Mr. Eliason suffers from these post-concussive symptoms and is precluded from pursuing his occupation as a mason."  (Id.).

Dr. Shane also found that the medication that Dugan provided Plaintiff, 600 mg of Motrin twice a day, was "totally and completely inadequate pain control/analgesia management for a patient with severe pain."  Dr. Shane also concluded that a failure to proscribe antibiotics and a six-day delay in corrective surgery for Plaintiff's jaw strongly contributed to Plaintiff's current disabilities involving cognitive functioning, eating, and speaking.  (Id.).

### III.  The Motion to Dismiss Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted) (reasoning that this statement of Rule 12(b)(6) standard remains acceptable following U.S. Supreme Court's decision in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007)).  To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level."  Phillips, 515 F.3d at 234.  When a complaint

contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (reaffirming rationale set forth in Twombly). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.

The "general standard for 12(b)(6) motions is modified, however, when civil rights claims are brought under 42 U.S.C. § 1983. In such cases there is an added requirement that the 'complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed plaintif[f].'" Gines by Gines v. Bailey, No. 92-4170, 1992 WL 394512, at *2 (E.D. Pa. Dec. 29, 1992) (quoting Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988)). The Third Circuit has added this specificity requirement in order to "'weed out frivolous claims and those that should be heard in state court'" and "'to provide the defendant with sufficient notice of the claims asserted.'" Id. (quoting Frazier v. Se. Pa. Transp. Auth., 785 F.2d 65, 67 (3d Cir. 1986)). Plaintiffs' Section 1983 claims will be analyzed pursuant to this standard.

**IV. Discussion**

In the Amended Complaint, Plaintiff alleges violations by all Defendants of his civil rights under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and of his right to be free from cruel and unusual punishment under Article I, Section 13 of the Pennsylvania Constitution. Plaintiff also alleges that the failure of the County of Lehigh to

adequately train prison personnel amounts to a policy and custom that deprived him of his federal

civil rights pursuant to Section 1983.  Finally, Plaintiff alleges a state law tort claim for corporate

negligence against Primecare.

The Court will discuss the factors necessary to sustain a Section 1983 claim in the context

of this case.  The Court will then evaluate and decide whether each Defendant's Motion to

Dismiss should be granted.

Section 1983 provides a remedy for a Plaintiff who can show that (1) the Plaintiff was

deprived of a right secured by the United States Constitution and (2) that the alleged violation

was committed by a person acting under color of state law.  Parratt v. Taylor, 451 U.S. 527, 535

(1981) (rev'd on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)).  Plaintiff alleges

that state officials deprived him of his rights secured by the Eighth and Fourteenth Amendments.

The Eighth Amendment protects individuals from cruel and unusual punishment and applies to

state officials through the Fourteenth Amendment.[5]  Here, Plaintiff alleges that these

Amendments were violated because Defendants were deliberately indifferent to his serious

medical needs.  The requisite state of mind to establish a Section 1983 claim against prison

officials for failure to provide adequate medical care is "deliberate indifference."  Estelle v.

Gamble, 429 U.S. 97, 105 (1976).  The same standard applies to claims brought under Article 1,

---

[5]      The Amended Complaint is unclear as to whether Plaintiff seeks to pursue any
other type of Fourteenth Amendment violation.  Plaintiff would not prevail if he alleged a
Section 1983 claim for his placement in "the hole."  The United States Supreme Court and Third
Circuit Court of Appeals have consistently held that placing an inmate in a segregation unit does
not implicate a prisoner's Fourteenth Amendment liberty interest.  See, e.g., Sandin v. Conner,
515 U.S. 472, 486-87 (1995); Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002); Smith v.
Mensinger, 293 F.3d 641, 654 (3d Cir. 2002).

Section 13 of the Pennsylvania Constitution.[6]

For Plaintiff to prevail on his civil rights claims pursuant to Section 1983 and the Pennsylvania Constitution, he will need to show that (1) he had an objectively serious medical need and (2) that Defendants had actual knowledge of "an excessive risk to [his] health and safety," yet deliberately disregarded that risk.  Id.  Defendants do not contest that Plaintiff had an objectively serious medical need which satisfies the first prong of the test.  However, Defendants contest Plaintiff's ability to satisfy the second prong of this test.  Plaintiff must plead specific facts with regard to each defendant to establish the defendant's actual knowledge of a serious medical risk and the deliberate disregard of that risk.  Alleging negligent diagnosis or treatment will not suffice to show a deliberate indifference claim even when the plaintiff is a prisoner.  Id. at 106.  It is "well-established law in this and virtually every circuit that actions [categorized] as medical malpractice do not rise to the level of deliberate indifference."  Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997).

The reasoning as to whether Plaintiff can state a claim against each individual defendant varies based on the defendant's role in the prison.   The Court will discuss Plaintiff's claims against Defendants seriatim.[7]

---

[6]    Article I, Section 13 of the Pennsylvania Constitution provides no greater protections than those rights afforded under the Eighth Amendment.  See, e.g., Commonwealth v. Spells, 612 A.2d 458 (Pa. Super. 1992).

[7]    Count V of Plaintiff's Amended Complaint asserts a state negligence action against Primecare.  All Counts against Primecare are analyzed in Section IV.E, infra.

A.      *Warden Dale A. Meisel*

Plaintiff names Warden Dale A. Meisel as a Defendant in Counts I, II, and IV of his

Amended Complaint.  In order to state a claim against Meisel, Plaintiff must allege that the

Warden was personally involved in the actions that violated Plaintiff's civil rights.  See Rode,

845 F.2d at 1207.  "The mere fact that a named defendant is in a supervisory position is

insufficient."  Fox v. Horn, 2000 WL 49384 (E.D. Pa., Jan. 21, 2000) (holding that a warden

could not be held liable for deliberate indifference based solely on his position); see also

Ashcroft v. Iqbal, supra at 1949.[8]

Plaintiff's Amended Complaint is devoid of any factual allegations relating to Warden

Meisel.  Plaintiff has failed to allege any facts indicating that Meisel had actual knowledge of his

serious medical needs or deliberately disregarded the medical risk.  Accordingly, the Court grants

Meisel's Motion to Dismiss on all Counts.

Plaintiff has not sought leave to amend his Complaint.  Nonetheless, "the court must

inform the plaintiff that he has leave to amend within a set period of time, unless amendment

would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.

2002).  There may exist facts that could be alleged to show that Meisel had actual knowledge of

Plaintiff's serious medical needs and deliberately disregarded the risk.  Therefore, Plaintiff will

be afforded the opportunity to amend his Complaint only with respect to Defendant Meisel

_____

[8]      Under Section 1983, a warden can be held liable in his individual capacity as a
policymaker.  However, Plaintiff has not alleged a specific supervisory practice created by Meisel
that caused a violation of his civil rights.  See, Stoneking v. Bradford Area Sch. Dist., 882 F.2d
770, 725 (3d Cir. 1989) (discussing the need to allege the specific practice or custom which
directly caused the constitutional harm in order to state a claim against a supervisor because of
his position as a policymaker).

within thirty (30) days in accordance with this Opinion.

**B.      *Lieutenant Brian Dugan***

Plaintiff names Lieutenant Dugan as a defendant in Counts I, II, and IV.  Dugan, in his
brief in support of his Motion to Dismiss, contends that his conduct fails to meet the "scienter
requirement of deliberate indifference."  (Doc. No. 14-2 at p. 6).  He argues that he was entitled
to assume Plaintiff was receiving proper care because Plaintiff had seen the medical staff.  See
Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (holding that absent a reason to believe, or
having actual knowledge that a prisoner is not receiving proper medical treatment, the scienter
requirement for a non-medical prison official is not satisfied).

Plaintiff has alleged facts to show that Dugan was aware of Plaintiff's injuries, and
nonetheless placed him in the hole and denied his requests for liquid food.  (Doc No. 14-2 at pg.
2).  Plaintiff has alleged that Dugan refused to provide him with a sick call slip and refused to
provide any medication until learning that Plaintiff had been attacked without provocation.  The
Court finds that Plaintiff has sufficiently plead that Lieutenant Dugan had knowledge of
Plaintiff's serious medical needs and disregarded them.  Accordingly, the Court denies Dugan's
Motion to Dismiss on all Counts.

**C.      *Officers Gulliver and Schaeffer***

Plaintiff names correctional officers Gulliver and Schaeffer as defendants in Counts I, II,
and IV.  Plaintiff alleges that Defendants Gulliver and Schaeffer were watching a football game

instead of ensuring the safety of prisoners.  Gulliver and Schaeffer's Motion to Dismiss requires

an analysis of whether their alleged conduct was  "intentionally injurious, callous, grossly

negligent, shocking to the conscience, unconscionable, intolerable to the fundamental fairness or

barbarous."[9]  Thomas v. Zinkel, 155 F. Supp. 2d 408, 411-12 (E.D. Pa. 2001) (dismissing claim

against guards for failure to allege any intentionally injurious or conscience shocking behavior)

(internal quotations omitted).

        The Court finds that watching a football game instead of supervising inmates may rise to

the level of grossly negligent or conscious-shocking behavior.  Had Officers Gulliver and

Schaeffer been performing their duties properly, Defendant might not have suffered the beating

inflicted or experienced a two and a half hour delay in obtaining medical treatment.  Viewing the

factual allegations in the light most favorable to Plaintiff at the Motion to Dismiss stage requires

the Court to deny Defendants Gulliver and Schaeffer's Motion to Dismiss on all Counts.


        **D.      *The County of Lehigh***

        Plaintiff names Lehigh County as a defendant in Counts I, II, III, and IV.[10]  In Count III,

Plaintiff alleges that Lehigh County has engaged in policies, practices, and/or customs of

inadequately training its prison staff; maintaining unsafe and inhumane conditions at the prison;

and improper supervising of the medical staff.  (Doc. No. 9 at pg. 10).

------

[9]      In support of their Motion to Dismiss, Defendants Gulliver and Schaeffer contend
that Plaintiff's allegations could only amount to negligence and do not rise to the level of a
constitutional violation.  (Doc No. 14-2 at pg. 5).  Defendants do not deny that they were
watching the football game instead of patrolling Floor 4B.  Id.

[10]      Counts I and II against Lehigh County may be duplicative of Count III.

A plaintiff may bring a Section 1983 claim against a local government entity as an individual defendant.  Monell v. Dep't of Soc. Serv.'s, 436 U.S. 658, 690-94 (1978).  In Grayson, this Circuit held that this type of Monell action places stringent requirements on a plaintiff:

> [A plaintiff] must allege that a "policy or custom" of the [defendant] was the "moving force" behind a violation of his Eighth Amendment rights. See Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997); Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir.2000). Because [the plaintiff] alleges a constitutional violation was committed by the [defendant's] employees, rather than by the [defendant] itself, to satisfy the "moving force" requirement he must allege that the [defendant] was deliberately indifferent to the possibility that such a violation would occur. Bryan County, 520 U.S. at 407.

293 F.3d at 107-08.  A plaintiff must allege a specific policy or custom that led to a constitutional violation so that the municipality is provided "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id. at 108 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Plaintiff has plead that the County of Lehigh improperly trained its prison staff and improperly supervised its medical staff.  Plaintiff has alleged facts to support these claims, such as Correctional Officers watching a football game instead of supervising inmates and Primecare's failure to provide proper treatment to Plaintiff.  These allegations put the County of Lehigh on sufficient notice of Plaintiff's claim and the grounds upon which it rests.  Thus, the Court denies Lehigh County's Motion to Dismiss on all Counts.

### E.    *Primecare Medical, Inc.*

#### 1.    *Civil Rights Violations*

Plaintiff alleges that Primecare violated his Eighth and Fourteenth Amendment rights pursuant to Section 1983 and his rights under the Pennsylvania Constitution in Counts I, II, and

IV. A private corporation that has contracted with a state to provide medical services may be a "person" for purposes of Section 1983 liability.  Thomas v. Zinkel, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001).[11]

In order to survive a motion to dismiss on these claims, Plaintiff must allege facts to show that Primecare was deliberately indifferent to his serious medical needs.  "'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments . . . .'"  United States ex rel. Walker v. Fayette Cty., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Here, Plaintiff did receive medical care.  Plaintiff was taken to the infirmary, examined, provided an ice pack, and referred for an x-ray.  Plaintiffs allegations focus on Primecare's failure to provide adequate testing, treatment, medication, food, and evaluations, not on Primecare deliberately ignoring his medical needs.  These allegations may be sufficient to state a claim for negligence, but they are not sufficient to state a claim for deliberate indifference.[12]

Therefore, the Court will grant Primecare's Motion to Dismiss on Counts I, II, and IV.

-----

[11]     Plaintiff does not name Primecare in Count III of his Amended Complaint.  For this reason, the Court will not decide Primecare's liability for a civil rights violation under the Monell test.

[12]     See White v. Napolean, 897 F.2d 103, 108 (3d Cir. 1990) (finding that medical negligence alone or any disagreements over the professional judgment of health care providers cannot result in an Eighth Amendment violation); Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (holding that disagreement over proper medical treatment does not support an Eighth Amendment claim); Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D. Pa. 1988) (finding no Eighth Amendment violation where an inmate is provided with medical care and there is dispute over adequacy of care).

The Court further finds that leave to amend these Counts would be futile.  Given that Plaintiff did receive medical attention, and the crux of Plaintiff's argument is that the treatment was insufficient, Plaintiff would not be able to show that Primecare was deliberately indifferent to his serious medical needs.

### 2.      *Corporate Negligence*

Count V of Plaintiff's Amended Complaint names Primecare as a defendant on a state law tort claim of corporate negligence.  Because the Court is dismissing all of the federal claims against Primecare, it must decide whether to exercise supplemental jurisdiction over Plaintiff's state law claims.  "A court 'may decline to exercise supplemental jursidiction' over the state law claims 'if the district court has dismissed all claims over which it has original jurisdiction.'"  Thomas, 155 F. Supp. 2d at 412-13 (quoting 28 U.S.C. § 1367(c)(3)).  The Court finds that Plaintiff has alleged sufficient facts regarding his negligence claim against Primecare at this stage.  Plaintiff has alleged facts to show that he was provided inadequate treatment and pain medication, given the severity of his injuries; that he was not provided timely treatment; and that he was not provided liquid food when he could not consume solid food.  Because all federal claims have been dismissed against Primecare, and because trial of the medical malpractice claim probably will involve medical experts and different issues than the remaining federal claims in this suit, the Court finds that Plaintiff's negligence claim against Primecare should be tried in state court.  Accordingly, the Court transfers Plaintiff's negligence claim against Primcecare to the Court of Common Pleas of Lehigh County.

**V. Conclusion**

For the foregoing reasons, the Court will grant Warden Dale A. Meisel's Motion to Dismiss on all Counts. The Court will deny Lieutenant Dugan, Correctional Officers Gulliver and Schaeffer, and Lehigh County's Motion to Dismiss on all Counts. The Court will grant Primecare's Motion to Dismiss on Counts I, II, and IV and will transfer the remaining Count V of Plaintiff's Amended Complaint against Primecare to the Court of Common Pleas of Lehigh County.

An appropriate Order follows.